# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES | ) |
| --- | --- |
| | ) |
| v. | ) 3-260 |
| SHERWIN PINNOCK | |

## OPINION AND ORDER

### SYNOPSIS

In this criminal matter, as directed by the Court of Appeals, I held an evidentiary hearing on March 23 and 26, 2012, limited to the question of Defendant's claim that counsel was ineffective with respect to his speedy trial rights. Upon consideration of the evidence offered at the hearing, and the parties' submissions, I will grant Defendant's Motion.

### OPINION

## I. APPLICABLE STANDARDS

### A. Section 2255

Relief is available under Section 2255 only under exceptional circumstances, when the claimed errors of law are "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962).

### B. Ineffective Assistance of Counsel

Under applicable standards, Defendant must meet a two-pronged test: "(1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's error, the result would have been different." Rolan

v. Vaughn, 445 F.3d 671, 681 (3d Cir. 2006). These standards apply to both appellate and trial counsel. Lusick v. Palakovich, 270 Fed. Appx. 108, 110 (3d Cir. 2008).

To meet the first prong, a defendant must first show that counsel's performance fell below "the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Counsel's conduct must be assessed according to the facts of the particular case, viewed as of the time of counsel's conduct. Id. at 689. To meet the prejudice prong, the pertinent question is "whether there is a reasonable probability that, absent the errors," the result would have been different. Id. at 695; see also United States v. Gray, 878 F.2d 702, 709-13 (3d Cir. 1989). The prejudice prong of Strickland rests on "whether counsel's deficient performance renders the result of the . . . proceeding fundamentally unfair," or strips the defendant of a "substantive or procedural right to which the law entitles him." Id. at 844.

## II. SIXTH AMENDMENT SPEEDY TRIAL RIGHTS

In order to evaluate whether counsel was ineffective in failing to raise a speedy trial challenge, and whether Defendant was prejudiced by any such failure, I must first assess the substantive merits of such a challenge.

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  In Barker v. Wingo, 407 U.S. 514, 530-33, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the Supreme Court identified four factors to weigh when considering whether that right has been violated: the length of delay; the reason for the delay; defendant's assertion of his right; and prejudice to the defendant.

First, therefore, I must assess the length of the delay. Generally speaking, in a case such as this, delay is measured from the date of indictment until the start of trial.  United States v. Battis, 589 F.3d 673, 678 (3d Cir. 2009).  In this case, Defendant was first named in a

superseding indictment on July 15, 2004. He was declared a fugitive on June 30, 2005. He was not arrested until October 7, 2008, and was brought to trial on May 12, 2009. Thus, there was a delay of approximately four and a half years between indictment and trial. This factor, therefore, weighs heavily against the Government.

Second, I address the reason for the delay. A neutral reason for the delay, such as negligence, weighs against the Government; in contrast, a delay caused by the defense weighs against the Defendant. Battis, at 680. Because it is the Government's duty to bring a defendant to trial, the "ultimate responsibility for such circumstances [as negligence, for example] must rest with the government." Barker, 407 U.S. 514, at 531.

During the approximately three years between the fugitive declaration and Defendant's arrest, however, the record demonstrates that the Government did not make a reasonable effort to locate Defendant. All Government agents testifying at the hearing agreed that the IRS bore primary responsibility for locating Defendant. Agent O'Donnell of the IRS testified that the best way to locate an individual is to question known associates about the person's location. When that practice failed to reveal Defendant's location, however, neither the IRS nor any other government agency took significant further action. The only other action taken in search of Defendant was to enter Defendant into computer databases, and to "drive by" addresses that Defendant was known to frequent in Arizona. The record is replete with reasonable avenues for locating Defendant, none of which the Government pursued. For example, there is an abundance of evidence that Defendant resided with his mother on Fulton Street in Brooklyn, New York, during significant time periods predating his indictment through his arrest. At the pertinent times, Defendant received bank statements, credit card statements, and payroll documents at that address. Further, Defendant listed the Fulton Street address on federal and state tax forms during

3

that time. I need not recite each piece of evidence in detail, because the Government neither refutes that evidence nor proffers any adequate explanation for the failure to pursue the Fulton Street address. The Government, however, never contacted Defendant's mother or other family members in Brooklyn, or in any way investigated the Fulton Street address, in an effort to determine his whereabouts. The fact that Defendant also used addresses in Florida and Arizona cannot render reasonable the Government's omissions, as there is no evidence that agents diligently pursued those alternative possible addresses or locations.

The Government contends that Defendant's fugitive status occasioned the delay between indictment and arrest and trial. The Government, however, proffered no evidence of factfinding before the declaration of fugitive status, and no evidence suggesting that Defendant attempted to avoid prosecution. Indeed, Defendant apprised his counsel that he had been unaware of the pending indictment and outstanding warrant against him; the Government presented no persuasive evidence to the contrary. Moreover, Defendant's conduct during the pertinent time period was inconsistent with an attempt to flee justice. As discussed supra, the evidence showed that Defendant lived with his mother during that time, and provided that address to various governmental and private entities. Indeed, he supplied the Fulton Street address to the Department of Homeland Security, and in connection with the immigration action that ultimately led to his arrest. The evidence adduced simply does not support a conclusion that Defendant bears primary responsibility for the delay in reaching trial. Instead, the evidence as a whole strongly suggests that the Government failed to make a diligent and good faith effort to bring him promptly to trial. See Smith v. Hooey, 393 U.S. 374, 383, 21 L. Ed. 2d 607, 89 S. Ct. 575 (1969). The reason for the delay, therefore, weighs in Defendant's favor.

Next, I assess Defendant's assertion of his right to a speedy trial. When a defendant is represented by counsel, he should identify "a motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance of success." Battis, at 681. The evidence shows that Defendant repeatedly brought what he termed a "statute of limitations" issue to the attention of his counsel. He asked her questions about why he was just coming to court now, given the age of the indictment -- to the effect of, "why did it take so long for them to find me." Defendant had explained to trial counsel, and the Court, that he had been unaware of the indictment or warrant. In any event, "even if a defendant fails to adequately assert his right to a speedy trial, that means only that the third Barker factor will be weighed against him. It does not mean that he cannot claim that his right to a speedy trial was violated." Battis, 589 F. 3d at 681. Defendant did not explicitly direct counsel to assert his speedy trial rights, but his communications to counsel indicated concerns that fell within the ambit of the Sixth Amendment. Under all of the circumstances, this factor weighs slightly in Defendant's favor.

Finally, I look to the prejudice occasioned by the delay. As the United States Supreme Court has stated, "we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." Doggett v. United States, 505 U.S. 647, 655 (1992). In this case, the delay was presumptively prejudicial. See Battis, 589 F. 3d at 683. Moreover, the possibility that a defense is impaired is the most serious interest protected by the right to a speedy trial. Barker, 407 U.S. at 522. Here, trial counsel testified that she was contacted by a co-defendant, who wished to testify that Defendant was not involved in the conspiracy charged. By then, however, this co-defendant had already been convicted, served his sentence, and been deported. Whether a jury

would have believed an account of Defendant's non-involvement is not for me to decide. Instead, it is clear that the passage of time impaired Defendant's ability to present favorable evidence. Therefore, in addition to any presumptive compromise caused by a delay in excess of four years, the delay in fact prejudiced Defendant. This factor weighs heavily in Defendant's favor.

According to the particular facts of this case, the performance of counsel -- who otherwise rendered competent assistance -- fell below applicable standards with respect to Defendant's speedy trial rights. The <u>Barker</u> factors weigh in Defendant's favor, and there is a reasonable probability that the outcome would have been favorable had counsel raised a speedy trial challenge. Thus, both prongs of <u>Strickland</u> are met, and Defendant is entitled to the relief sought.

**CONCLUSION**

This case presents exceptional circumstances that warrant habeas relief. "In light of the policies which underlie the right to a speedy trial, dismissal must remain… 'the only possible remedy.'" <u>Strunk v. United States</u>, 412 U.S. 434, 440 (U.S. 1973). For these reasons, Defendant's Motion will be granted, and his conviction vacated. An appropriate Order follows.

**ORDER**

AND NOW, this 17th day of May, 2012, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Vacate Sentence is GRANTED, and his sentence vacated. Defendant shall be released from custody. The clerk shall mark this case closed.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court